UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **CHRISTIAN METZLER,** individually and on behalf of all others similarly situated, *Plaintiff,* v. **INSURANCE EXPRESS.COM, INC.**, a Florida registered corporation, *Defendant,* | Case No. **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Christian Metzler ("Plaintiff Metzler" or "Metzler") brings this Class Action Complaint and Demand for Jury Trial against Defendant Insurance Express.com, Inc. d/b/a Loud Cloud Nine or LCN ("Defendant" or "LCN") to stop the Defendant from violating the Telephone Consumer Protection Act by making unsolicited telemarketing calls to consumers with phone numbers that are registered on then National Do Not Call registry ("DNC"), and calling consumers *after* they have expressly requested not to be called. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Metzler, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Metzler is a resident of Portland, Oregon.

2. Defendant LCN is a Florida corporation headquartered in West Palm Beach, Florida. Defendant LCN conducts business throughout this District and throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant has its headquarters located in this state and the venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct towards Plaintiff from here.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 5.0 billion robocalls were placed in March 2023 alone, at a rate of 161.1 million per day. www.robocallindex.com (last visited April 20, 2023).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Defendant Insurance Express.com, Inc. operates using the d/b/a LCN or Loud Cloud Nine.

14. Defendant Insurance Express.com designed their telemarketing scheme to solicit consumers registered on the Do Not Call list to sell them insurance products using spoofed phone numbers and the generic name LCN to avoid being caught.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3

15. Insurance Express.com Inc. never registered LCN or Loud Cloud Nine as their d/b/a, yet Insurance Express.com uses this name LCN or Loud Cloud Nine when they make their telemarketing calls.

16. There are several employees of Defendant that simultaneously display that they work for LCN and yet have insuranceexpress.com emails. Kevin DiPasquale shows that he was the Former Manager of Verifications for LCN/Loud Cloud Nine on his Facebook page:

[3]

17. DiPasquale placed a job posting on his Facebook page while he was still working for LCN showing that his email address was Kdipasquale@insuranceexpress.com:

---

[3] https://www.facebook.com/kevin.dipasquale.35



18. Defendant operates the website workatmyhouse.weebly.com to find call center agents to work for them. On the website they state LCN (Loud Cloud Nine) solicits consumers for auto, home, health and life insurance products and has an office in West Palm Beach (just like Defendant Insurance Express.com Inc.).

19. InsuranceExpress.com lists their office in West Palm Beach and advertises on their website that they sell auto, home, health, and life insurance products.

20. Appy Manjunath, a marketing specialist and insurance agent for Insurance Express.com Inc, lists on her linkedin profile that as part of her duties she exports "lead data from Salesforce to Excel for data scrubbing before loading into Auto Dialer."[5] She also lists that she

---

[4] https://www.facebook.com/profile/1790509809/search/?q=insurance
[5] https://www.linkedin.com/in/appy-manjunath-86238ba9/

5

had overlapping employment with LCN as a customer service specialist.



21. Chantal Delaney is listed as the Head of Recruitment at Loud Cloud 9 on her Linkedin profile page, yet simultaneously her Facebook profile page shows that she works for Insurance Express:



---

[6] https://www.linkedin.com/in/chantal-delaney-019688126/



22. Former employees of LCN have also posted online connecting Insurance Express.com, Inc. to LCN, including:



23. Defendant LCN provides insurance plans to consumers with offices located in Florida, Massachusetts, and New Hampshire.[9]

---

[7] https://www.facebook.com/chantal.delaney.3
[8] https://800notes.com/Phone.aspx/1-562-387-1428/8
[9] https://www.linkedin.com/company/insurance-express.com-inc/about/

24. Defendant LCN places solicitation calls to consumers in order to sell its insurance plans.

25. These calls are being placed to consumers that have registered their phone numbers on the DNC, as per Plaintiff's experience.

26. Former LCN employees have posted complaints online about the cold calling they had to engage in to generate business, including:

> **There's no comprehensive training**
> Agent/Customer Service (Former Employee) - Salem, NH - April 10, 2020
>
> Really old fashioned "fend for yourself" techniques that do not foster a solid enough grasp on the work itself. Workplace culture is fairly lax, not so much "corporate tension" as a regular office. The hardest part of the job is the actual objective itself. Getting leads and getting people to stay on the phone with you. People don't like coldcalling. I learned a lot of different things about a variety of insurances while there, but couldn't hack the expectations as I'm not a competitive person. Management was alright, but ultimately not very helpful. [10]

> **Bad**
> Insurance Sales Representative (Former Employee) - Salem, NH - August 9, 2018
>
> They expect a lot from you and the job doesn't require much. You cold call people to then transfer them to an agent for them to get quotes from more people calling them for lower insurance rates. Not a big deal and the pay was just above the NH minimum. I didn't reach my "quota" and I got fired in front of the entire open floor by a manager who didn't even make eye contact with me. [11]

27. To make matters worse, LCN continues to place unsolicited calls to consumers after they have been instructed to stop calling by a consumer like the Plaintiff's experience.

28. Consumers have voiced their complaints online about unsolicited calls that they have received from Defendant LCN, including complaints that Defendant received directly on its

---

[10] https://www.indeed.com/cmp/Insurance-Express-&-Member-Companies/reviews
[11] Id.

8

Google page, and including complaints about receiving calls after telling the employees to stop calling, including:

- "This is a scam. They love to blow up your phone trying to get any and all personal information from you to sell online."[12]

- "I was put on a list - I NEVER signed up for. When I called to ask them to take me off the list they had ALL my information. Let's be perfectly clear. I DID NOT GIVE THIS COMPANY MY INFORMATION!
  When I further inquired HOW they got my information - they were belligerent towards me. UTTERLY Rude and condescending…"[13]

- "Yeah, calling me 6 times while I'm at work is not going to endear me to your insurance company."[14]

- "The people have called me many times. Phone #(979)599-**** and (772)742-**** and have only been able to speak to Ashly, she continues to hang up on me when I ask to speak to her boss. I want to speak to boss!"[15]

- "tOO MANY CALLS FROM DIFFERENCT PHONE NUMBERS FOR UNSOLICITED AUTO RATES--i AM NOT INTERESTED!!!!!!- TAKE MY NAME AND PHONE NUMBER OFF YOUR CALL SHEETS--i RECEIVED 5 CALLS FROM DIFFERENT PHONE NUMBERS ALL ASSOCIATED WITH LCN VERIFICATION WITHIN THE LAST 24 HRS AND i DO NOT WANT ANY MORE UNSOLICITED PHONE CALLS-- ALL 5 CALLS FROM DIFFERENT AREA CODES AND NEVER A PERSON ON THE LINE WHEN i ANSWER. tAKE ME OFF YOUR CALL SHEET IMMEDIATELY!!!!!!!"[16]

- "Dont know how they got my information as I dont need car insurance"[17]

- "calls almost everyday after being told not to call."[18]

- "When I told LCN caller Sydney I did not own a car and asked her to place my number on the DO NOT CALL LIST, curtly she replied, "NO" and hung up. LOL"[19]

---

[12] https://www.google.com/search?q=Insurance+Express
[13] Id.
[14] Id.
[15] https://insurance-express.pissedconsumer.com/review.html#reviews
[16] Id.
[17] https://www.callercenter.com/770-284-3059.html
[18] Id.
[19] Id.

9

- "Impossible to block because they call from slightly different number each time. "LCN" about a car insurance quote. Robo call."[20]

- "They keep calling asking for a person not associated with my phone, I have asked to be taken off call list, they keep calling always a different number from different state."[21]

29. In response to these calls, Plaintiff Metzler brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF METZLER'S ALLEGATIONS

30. Plaintiff Metzler registered his cell phone number on the DNC on August 20, 2003.

31. His cell phone number ends with the digits 6122.

32. Plaintiff Metzler uses his cell phone number for personal use only like one would use a residential line. It is not associated with a business.

33. The calls that Plaintiff received from Defendant LCN were all received more than 31 days after Plaintiff registered his cell phone number on the DNC.

34. Since approximately August of 2022, Plaintiff Metzler has received at least 30 unsolicited calls from Defendant LCN to his cell phone number.

35. There were days when Plaintiff received multiple calls to his cell phone number, such as on February 15, 2023 when he received 2 unsolicited calls from LCN.

36. When Plaintiff Metzler answered the calls, an employee identified the company as LCN and tries to solicit the sale of an auto insurance plan.

---

[20] https://lookup.robokiller.com/p/973-500-3074
[21] Id.

37. Plaintiff Metzler has asked the employees to stop calling multiple times and demanded to speak to a manager. Despite his multiple stop requests, Plaintiff found the LCN employees to be rude. Oftentimes, he was hung up on when demanding that LCN stop calling him. Likewise, Plaintiff was hung up on when asking to speak to a manager.

38. Plaintiff Metzler has tried calling LCN back to try and speak to a manager, but the calls are always from spoofed numbers and therefore calling back results in the phone number not in service or connects to a consumer who does not place telemarketing calls.

39. On March 1, 2023, Plaintiff's attorneys sent a demand for consent letter to info@insuranceexpress.com and to date, there has been no response.

40. On March 27, 2023 at approximately 1:38 PM, Plaintiff received an unsolicited call from Defendant LCN, from phone number 918-948-6268.

41. Later on March 27, 2023, Plaintiff received another unsolicited all from Defendant LCN from phone number 862-280-4625.

42. According to an online complaint about calls from LCN, phone number 918-948-6268 is a number used by Defendant LCN:



43. Similarly, according to an online complaint about calls from LCN, phone number 862-280-4625 is a number used by Defendant LCN:



44. On the website Youmail.com, consumers also reported that calls from 862-280-4625 were regarding auto insurance:

---

[22] https://www.scampulse.com/lcn-reviews
[23] Id.

> directory.youmail.com/phone/862-280-4625
>
> **Commonly Reported Names**
>
> Auto insurance spam

[24]

45. Based on the above, Plaintiff Metzler believes that the calls from 862-280-4625 and 918-948-6268 were both from Defendant LCN.

46. Plaintiff Metzler has never done business with LCN.

47. Plaintiff Metzler was not looking to get an insurance quote for automotive insurance.

48. The unauthorized solicitation telephone calls that Plaintiff received from or on Defendant LCN have harmed Plaintiff Metzler in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

49. The calls also caused undue distress, as Plaintiff was unable to get the calls to stop by asking LCN employees to stop calling his cell phone number.

50. Seeking redress for these injuries, Plaintiff Metzler, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

---

[24] https://directory.youmail.com/phone/862-280-4625

## CLASS ALLEGATIONS

51. Plaintiff Metzler brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) LCN called on more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant LCN called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop calling.

52. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Metzler anticipates the need to amend the Class definition following appropriate discovery.

53. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

54. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

    (c)    whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

    (d)    whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

55. **Adequate Representation**: Plaintiff Metzler will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Metzler has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Metzler and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Metzler nor his counsel have any interest adverse to the Classes.

56. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect

to the Classes as wholes, not on facts or law applicable only to Plaintiff Metzler. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Metzler and the Do Not Registry Class)

57. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

58. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

59. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

60. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Metzler and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is

16

maintained by the federal government.

61. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Metzler and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

62. As a result of Defendant's conduct as alleged herein, Plaintiff Metzler and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

63. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Metzler and the Internal Do Not Call Class)**

64. Plaintiff repeats and realleges paragraphs 1-56 of this Complaint and incorporates them by reference herein.

65. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

66. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

67. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations

prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

68. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Metzler requests a jury trial.

**CHRISTIAN METZLER**, individually and on behalf of all others similarly situated,

DATED this 15th day of June, 2023.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
Telephone: (877) 333-9427


Avi R. Kaufman
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881


*Attorneys for Plaintiff and the putative Class*